UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONNIE CHEN,<br>    *Plaintiff,*<br>    *v.*<br>ROGER YOUNG,<br>    *Defendant.* | Civil No. 3:11cv1524 (JBA)<br><br>January 28, 2014 |

**RULING GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

Defendant Roger Young, a former lieutenant with the New Haven Police Department ("NHPD"), moves [Doc. # 63] for summary judgment on Plaintiff Connie Chen's claim under 42 U.S.C. § 1983 for denial of access to court, stemming from Plaintiff's unsuccessful efforts to obtain records from the NHPD related to its criminal investigation of an automotive wreck in which Plaintiff was seriously injured after the tires of her vehicle were slashed.

**I.    Facts**

In November 2008, police officers responding to Plaintiff's one-car collision observed that one tire of Plaintiff's vehicle had been slashed. The NHPD opened a criminal investigation to determine if the wreck was caused by someone deliberately vandalizing Plaintiff's vehicle. On April 10, 2009, Officer Steven Manware, the NHPD investigating officer, received a call from Plaintiff's mother, Laura Piao, in which she reported her belief that "her daughter's tire was maliciously popped by a fellow student on the swim team." (Case Incident Report, Ex. C to Def.'s Loc. R. 56(a)1 Stmt. [Doc. # 63-20] at 1.) Ms. Piao provided the names of two teammates on the varsity swim team, who reportedly "did not like her daughter," and who Ms. Piao suspected of vandalizing

the car. One of the suspects "would get jealous of" Plaintiff, because she "was [the] better swimmer," and the suspect's mother would stare at Plaintiff during swimming events and "make her feel uncomfortable." (*Id.*) The other suspect was reportedly angry that Plaintiff had applied to Tufts University and thought that Plaintiff "would get accepted to Tufts and the Swimming Program and [redacted] would be left out because she was not a better swimmer." (*Id.*)

In June 2009, the NHPD closed the criminal investigation without making any arrest. In October 2010, pursuant to Connecticut's Freedom of Information Act ("FOIA"), Plaintiff and Ms. Piao submitted a request to the City of New Haven for all records related to its investigation of the incident. (*See Chen et al. v. City of New Haven, et al.* No. FIC 2010-686 (Connecticut Freedom of Information Commission Final Decision Aug. 24, 2011), Ex. E to Def.'s 56(a)1 Stmt. [Doc. # 63-20] (the "FOIA Ruling") at 1.) Defendant Young was in charge of the NHPD's records department at all relevant times. (*See* Young Aff., Ex. A to Def.'s 56(a)1 Stmt. [Doc. # 63-16] ¶ 4.)

In response to this request, the City provided Plaintiff "with a package of responsive records, approximately one inch thick" with redactions on two pages of Officer Manware's "Case Incident Report" memorializing Ms. Piao's statement. (*Id.*) The redactions consisted principally of the names of the two suspects.[1] The NHPD redacted these names pursuant a FOIA exemption for non-public law enforcement records where "disclosure of said records would not be in the public interest because it

---

[1] There are other redactions that also appear to be names of other individuals, but it does not appear that any of these other individuals, such as the varsity coach and athletic director, were referred to by Ms. Piao as potential suspects. Plaintiff does not challenge the redaction of these names.

2

would result in the disclosure of," Conn. Gen. Stat. § 1-210(b)(3), "uncorroborated allegations that an individual has engaged in criminal activity," *id.* § 1-216.

In November 2010, Plaintiff filed an appeal with the State's Freedom of Information Commission, challenging the redactions made to these two pages. In August 2011, the Commission issued a ruling, holding that the City properly redacted the names pursuant to Conn. Gen. Stat. § 1-210(b)(3). (FOIA Ruling at 5.)

Although the record is unclear as to what role Defendant played in responding to the FOIA request,[2] at some point, Plaintiff also submitted a separate request for these same records to the State's Office of the Victim's Advocate ("OVA"). In response to this OVA records request, Defendant spoke with Officer Manware about his Case Incident Report, and learned that the Ms. Piao's allegations against the two suspects were "uncorroborated," and thus could not be disclosed pursuant to FOIA. (Young Dep. Tr., Ex. B to Def.'s 56(a)1 Stmt. [Doc. # 63-17] at 34–38); *see also* Conn. Gen. Stat. § 1-216. Accordingly, Defendant redacted the suspects' names from the documents and then produced them pursuant to the OVA request. (Young Dep. Tr. at 44.) It is undisputed that Defendant was not involved in the investigation of the incident and never interacted directly with Plaintiff. (Chen Dep. Tr., Ex. F to Def.'s 56(a)1 Stmt. [Doc. # 63-21] at 23.)

---

[2] *See infra* note 5.

## II.     Discussion[3]

### A.     Denial of Access to Court

The Supreme Court has described two categories of access to courts claims. "In the first are claims that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Christopher v. Harbury*, 536 U.S. 403, 413 (2002). In these "forward looking" cases, the opportunity to litigate a claim has not yet been lost, and thus "the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed, such as "an order requiring waiver of a [filing] fee to open the courthouse door for" an indigent litigant. *Id.*

The parties both agree that Plaintiff asserts a "backward looking" denial of access claim. This "category covers claims not in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future. The official acts claimed to have denied access

---

[3] Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

may allegedly have caused the loss . . . of a meritorious case." *Id.* at 413–14 (footnote omitted).

As the Second Circuit has recognized, "the viability of backward-looking right-of-access claims is far from clear in this Circuit," as the Supreme Court in *Harbury* "'was careful *not* to endorse the validity of these backwards looking claims.'" *Sousa v. Marquez*, 702 F.3d 124, 128 (2d Cir. 2012) (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1209 (10th Cir. 2004)).[4]  Without deciding whether a backward–looking claim was viable, the Second Circuit concluded:

> Such claims, if recognized, would be available only if the governmental action caused the plaintiff's suit to be dismissed as untimely or if official misconduct was so severe as to render hollow his right to seek redress. This circumstance may arise, for example, if public officials withheld from the plaintiff key facts which would form the basis of the claims for redress. But such claims are available only if a judicial remedy was completely foreclosed by the false statement or nondisclosure.

*Id.* (footnotes, internal quotation marks, citations, and alterations omitted).

---

[4] Indeed, the Supreme Court "assume[d], without deciding, the correctness of the [courts of appeals] decisions" recognizing a backward-looking right of access claim. *Harbury*, 536 U.S. at 414 n.9.

Defendant makes several arguments in favor of summary judgment, the most persuasive of which is that Defendant's redaction of the names of the two suspects from the Case Incident Report did not "completely foreclose" Plaintiff's ability to file a civil suit.[5]  As Plaintiff acknowledges, her mother provided Officer Manware with the names of the two suspects, and the report at issue merely recites Ms. Piao's statement.  At her deposition, Plaintiff was able to identify the names of the two suspects that her mother had provided to Officer Manware by reviewing the redacted Case Incident Report that Plaintiff claims failed to provide her with this very information.  (*See* Chen Dep. Tr. at 54–55.)

As Plaintiff's counsel acknowledged at oral argument, Plaintiff's knowledge of the names that she asserts were wrongfully withheld from her would be fatal to her access to court claim.  Counsel argued, however, that the redaction of the report precluded him from being able to know with certainty whether any additional information had been withheld.  There is no evidence in the record, however, to create a genuine issue of disputed fact on this point.  Officer Manware submitted an affidavit in which he stated that the Case Incident Report reflects his conversion with Ms. Piao, and the "redacted

---

[5] Defendant contends that Plaintiff has failed to establish that he was personally involved in an alleged constitutional violation, because the record only definitively establishes that he redacted the records requested via the OVA and not FOIA.  At oral argument, however, defense counsel conceded that Defendant personally redacted a version of the Case Incident Report that eventually made its way to Plaintiff and is the subject of her claim.  Accordingly, the Court is satisfied that Plaintiff has established Defendant's personal involvement.  *See Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia,* the defendant's personal involvement in the alleged constitutional deprivation.").

names on the . . . report were provided to me" by Ms. Piao. (Manware Aff., Ex. C to Def.'s 56(a)1 Stmt. [Doc. # 63-20] ¶¶ 5–6.) The Case Incident Report does not suggest that any additional information regarding suspected vandals was redacted. The report repeatedly refers to what "Laura [Piao] said," and the redactions are limited in frequency and generally appear to consist of no more than a few words, and often just one. (*See* Case Incident Report at 1–2.) In context, each of these redactions appears to be a name, (*see, e.g.*, *id.* at 1 ("Connie said [redacted] did not like her daughter either.")), and Plaintiff's theory that additional information was withheld is merely conjecture without an evidentiary basis on which a jury could reasonably rely.

In her brief, Plaintiff asserts that the "information the defendant kept from the plaintiff prevented her from taking her grievance to court, because she lacked information against whom to bring her grievance" and that without this information she could not be sure that she was not filing a "frivolous lawsuit." (Pl.'s Opp'n [Doc. # 68] at 11.) As discussed above, Plaintiff however, has not shown that Defendant's redaction deprived her of any information that she did not already know. Further, it is not clear how a report that merely contained Ms. Piao's allegations would have had lent any additional credence to a civil suit.

With her knowledge of the names of the two suspects, Plaintiff could have initiated a state court civil action even if all materials facts necessary to prevail were not yet known to her. *See Reichenbach v. Kraska Enterprises, LLC*, 105 Conn. App. 461, 470 (2008) ("Our general practice in this state is to require fact pleading only. Practice Book § 10–1 requires only that each pleading contain a plain and concise statement of the material facts on which the pleader relies, but not of the evidence by which they are to be

proved." (internal quotation marks and alterations omitted)).  Additional evidence about the suspects could have been obtained through discovery, and the names of any additional suspects could have been added by an amended complaint.  *See Sousa*, 702 F.3d at 129 ("It is ultimately a plaintiff's responsibility to allege and then prove the factual and legal basis for his claim.  If a party is aware of the basic facts undergirding his claim but fails to make his case, whether through inadequate discovery or otherwise, he may not relitigate that dispute through a denial-of-access claim.").

For example, in *Sousa*, the Second Circuit held that "a backward-looking access suit . . . may not proceed if the plaintiff was, at the time of the earlier lawsuit, aware of the facts giving rise to his claim."  702 F.3d at 128.  Sousa had worked at the Connecticut Department of Environmental Protection ("DEP") and alleged that he experienced threats of violence in the workplace.  Marquez, an attorney with the Connecticut Department of Administrative Services, investigated Sousa's claim and issued reports concluding that workplace violence had not occurred.  *Id.* at 126.  After Sousa's lawsuit against his employer was dismissed, he brought a separate denial-of-access claim against Marquez, alleging that Marquez had "discovered and concealed strong evidence in favor of [Sousa's] contention that workplace violence was a serious and ongoing problem at the DEP and had chosen not to interview other witnesses who would have testified to the same effect."  *Id.* at 127 (alterations in original).

Because Sousa acknowledged that he was "aware of the purportedly violent conditions at DEP, . . . he was necessarily aware of the alleged inaccuracies in Marquez's reports at the time he litigated his prior suit, even if he did not then appreciate that Marquez's distortions were (as he now claims) intentionally false or misleading."  *Id.* at

8

129. As a result, "any intentionally misleading statements or omissions in Marquez's report did not foreclose Sousa's ability to present his prior case in court," because Sousa had "knowledge of the facts giving rise to his claim." *Id.* at 128.

"The point of the backward-looking right of access . . . is . . . not to convert every instance of deception by a governmental witness into a separate federal lawsuit." *Id.* at 128–29. Instead, such claims are generally only recognized where there has been "a massive governmental cover-up denying plaintiffs the ability to gather evidence" and "they have irrevocably lost the ability to file a lawsuit." *Ponterio v. Kaye*, No. 06cv6289 (HB), 2007 WL 141053, at *9 (S.D.N.Y. Jan. 22, 2007), *aff'd,* 328 F. App'x 671 (2d Cir. 2009).

Similarly, in *Gagain v. Scirpo*, No. 3:09-cv-00571 (CSH), 2013 WL 6839466, at *1 (D. Conn. Dec. 27, 2013), the plaintiff claimed that the destruction of records related to her arrest precluded her from bringing a false arrest lawsuit against the police department. The court granted summary judgment to the defendant on the plaintiff's denial of access claim because although the destruction of the records prevented the plaintiff from knowing the identity of some potential defendants against whom she could have asserted a false arrest claim, "[i]t was not necessary for Plaintiff to know all potential defendants" in order to bring such an action. *Id.* at *8. Instead, with an amended complaint, "additional defendants or claims may be added to a lawsuit as they are identified through discovery." *Id.*

Accordingly, as in *Sousa* and *Gagain*, Plaintiff had sufficient information to at least initiate a lawsuit, unlike in cases, such as *Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984), in which a massive government cover up completely foreclosed

judicial relief. In *Bell*, for example, the Seventh Circuit held that a police cover-up of a fatal shooting for twenty years, which included planting evidence and concocting false statements, constituted denial of access by preventing the victim's family from being able to successfully prosecute a wrongful death suit in state court. *See id.* ("Though Dolphus Bell filed a wrongful death claim in state court soon after the killing, the cover-up and resistance of the investigating police officers rendered hollow his right to seek redress, either under Wisconsin wrongful death law or federal civil rights laws. Defendants portray as a natural product of the adversarial system the transformation of a police shooting of an unarmed man in the back into a killing in self-defense of a suspected felon, fleeing after a knife attack on a police officer. So gross a distortion of the facts cannot be countenanced.").

Accordingly, even interpreting the evidence in the light most favorable to Plaintiff—as the Court must for purposes of summary judgment—the Court concludes that no reasonable jury could find that Defendant's actions foreclosed Plaintiff's ability to file a civil suit against her suspected tortfeasors. Given this conclusion, the Court need not address the parties' arguments regarding the statutory propriety of the redactions or Defendant's entitlement to qualified immunity. Even if Defendant's redactions were not authorized by state law, *see* Conn. Gen. Stat. § 1-210(b)(3), and the NHPD failed to destroy records containing uncorroborated allegations, *see id.* § 1-216, Plaintiff's knowledge of the suspects' names and motivation for sabotage is fatal to her denial of access claim.

### III.     Conclusion

For the reasons set forth above, Defendant's Motion [Doc. # 63] for Summary Judgment is GRANTED.  The Clerk is directed to close the case.


IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 28th day of January, 2014.